UNIVERSAL SHIPPING
CORPORATION

v.

LOCAL 953—CHECKERS AND TALLY-MEN INTERNATIONAL ASSOCIA-TION and Local 858—International Longshoremen's Association and Local 829—International Longshoremen's Association.

Civ. No. 20244.

United States District Court
D. Maryland.

Jan. 2, 1969.

David Freishtat, Baltimore, Md., for plaintiff.

John J. O'Connor, Jr., and O'Connor & Preston, Baltimore, Md., for defendants.

THOMSEN, Chief Judge.

Claiming jurisdiction under Section 208 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 178, Universal Shipping Corporation filed herein on December 23, 1968, a complaint seeking a temporary restraining order and other injunctive relief against three local unions of the International Longshoremen's Association, for the alleged purpose of enjoining them from violating the provisions of an injunction issued in October 1968 by the United States District Court for the Southern District of New York.

Defendants (the local unions) have moved to dismiss the complaint for lack of jurisdiction, improper venue, failure to state a claim upon which relief can be granted, and other reasons.

A hearing has been held at which plaintiff submitted affidavits and other documents, and both sides have filed briefs. After examining the statute and the authorities, this Court has concluded that the complaint must be dismissed.

■ In enacting the Labor Management Relations Act of 1947, Congress fashioned elaborate procedures to cope with strikes or lock-outs which have the effect of imperiling the national health or safety. These procedures are incorporated in Sections 206–210 of the Act, 29 U.S.C.A. §§ 176–180. Their dual purpose is to alleviate, at least temporarily, a threat to the national health or safety, and to promote settlement of the underlying dispute. United Steelworkers of America v. United States, 361 U.S. 39, 44, 80 S.Ct. 1, 177, 4 L.Ed.2d 12 (1959); Seafarers International Union of North America, Pacific District v. United States, 304 F.2d 437 (9 Cir. 1962), cert. den., Pacific Maritime Ass'n v. Seafarers International Union, 370 U.S. 924, 82 S.Ct. 1566, 8 L.Ed.2d 504 (1962). The procedures include the appointment of and report by a board of inquiry. Section 208, 29 U.S.C.A. § 178, then provides, in pertinent part:

"(a) Upon receiving a report from a board of inquiry the President may direct the Attorney General to petition any district court of the United States having jurisdiction of the parties to enjoin such strike or lock-out or the continuing thereof, and if the court finds that such threatened or actual strike or lock-out—

"(i) affects an entire industry or a substantial part thereof engaged in trade, commerce, transportation, transmission, or communication among the several States or with foreign nations, or engaged in the production of goods for commerce; and

"(ii) if permitted to occur or to continue, will imperil the national health or safety, it shall have jurisdiction to enjoin any such strike or lockout, or the continuing thereof, and to make such other orders as may be appropriate."

\* \* \* \* \* \*

■ The "basic purpose" of Congress in providing for such an injunction "seems to have been to see that vital production should be resumed or continued for a time while further efforts were made to settle the dispute." *United Steelworkers*, supra, 361 U.S. at 41, 80 S.Ct. at 3.

On or about October 1, 1968, the United States brought an action under that section in the Southern District of New York against International Longshoremen's Association, AFL–CIO, Atlantic Coast District, ILA, and South Atlantic

**6**

and Gulf Coast District, ILA, and against sixteen maritime steamship trade associations, including the Steamship Trade Association of Baltimore. On October 16, in that case, the Court issued an injunction which provided inter alia:

"(1) That the defendants and each of them and their officers, agents, servants and employees and all persons in active concert or participation with them be and they hereby are restrained:

"(a) From in any manner continuing, encouraging, ordering, aiding, engaging in or taking any part in any strike or lock-out in the maritime industry of the United States, and

"(b) From in any manner interfering with or affecting the orderly continuance of work in said industry at the same rates of pay, hours of labor, and other terms and conditions of employment in effect immediately prior to October 1, 1968, subject to such modifications thereof as the defendants may agree upon, and from taking any action which would interfere with this Court's jurisdiction in the premises.

\* \* \* \* \* \*

"(4) That the defendants are directed to engage in free collective bargaining in good faith for the purpose of resolving their disputes and to make every effort to adjust and settle their differences.

"(5) This injunction shall remain in full force and effect under the further order of this Court."

That injunction was terminated on December 20, 1968, at 7:05 p. m.

Meanwhile, on or before December 11, plaintiff herein, which is not a member of the Steamship Trade Association of Baltimore or of any other party to the New York suit, had engaged the Hopkins Stevedoring Company to unload in the port of Baltimore cargo from the M/S Falcon, a vessel chartered by plaintiff. Because of a dispute under the Baltimore labor agreement with respect to the number of checkers, one of the defendants herein (Local 953) picketed the facility where the Falcon was discharging, and the two other defendants (Locals 858 and 829) refused to continue to discharge the cargo from the Falcon on December 11–13. The dispute was then settled and discharge of the cargo was resumed on December 14.

During the period December 11–13, plaintiff considered the possibility of asking the government to obtain a supplemental or ancillary order with respect to that picketing, or of seeking injunctive relief itself, but did nothing until this action was filed on December 22, two days after the injunction issued in the Southern District of New York had been terminated.

Two other vessels chartered by plaintiff had arrived in Baltimore on December 17. Until December 20 the defendants herein supplied longshoremen to the Hopkins Stevedoring Company to discharge the cargo from those vessels during daylight hours, but failed or refused to provide longshoremen who were willing to work overtime or at night, and refused to supply any longshoremen after the injunction expired on December 20. Accordingly, those two vessels have not been fully discharged, and losses are being incurred and will be incurred by plaintiff and by the consignees of the cargo. Plaintiff claims that "defendants, by picketing during the 80 day injunction period, have deprived the Plaintiff of at least 3 of the 80 days guaranteed under the Act." Plaintiff seeks an injunction "implementing" the original injunction issued in the Southern District, "by providing for an additional 3 days in view of the notorious violations by the Defendants of the injunction over a 3 day period."

■ 1. This Court has no jurisdiction to grant the relief requested. Section 208 of the Act, 29 U.S.C.A. § 178, authorizes actions by the Attorney General at the direction of the President, not by a private corporation. That section

does provide for "such other orders as may be appropriate," as well as for the original injunction, but no case has been cited or found which intimates that such "other orders" may be obtained by a private individual or corporation, not a party to the original action, who has been damaged by some violation of the injunction. Such actions are not provided for by the Act and are not necessary to achieve its purpose. See United States v. International Longshoremen's Ass'n, 116 F.Supp. 262 (S.D.N.Y.1953), in addition to the cases cited above. Plaintiff suggests an analogy to the antitrust laws, which may be enforced by a private corporation or individual under certain circumstances. Such right of action is conferred specifically by Section 4 of the Clayton Act, 15 U.S.C.A. § 15. There is no such provision here. On the contrary, as the Supreme Court noted in *United Steelworkers,* supra:

> "But the statute does recognize certain rights in the public to have unimpeded for a time production in industries vital to the national health or safety. It makes the United States the guardian of these rights in litigation." 361 U.S. at 43, 80 S.Ct. at 4.

It is not necessary to decide whether and under what circumstances supplementary or ancillary orders may be sought by parties to the original case, and whether such orders may be sought in other districts than the one in which the original injunction was issued.

 2. No supplementary or ancillary order, wherever issued, can properly continue the injunction more than 80 days, or after the original injunction has been terminated. See discussion in *Seafarers,* supra, 304 F.2d at 442 et seq. It is not necessary to decide when proceedings for contempt may be instituted. Nor is it necessary to comment on other points discussed by the parties, beyond noting that the broad scope of equity powers cannot create federal jurisdiction.

The complaint is hereby dismissed, with costs.